FILED
2026 OCT 05 04:09 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 26-2-32543-0 KNT

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**

**COUNTY OF KING**

SARA BUBLITZ, individually and on behalf of all others similarly situated,

Plaintiff,

v.

GUILD MORTGAGE COMPANY LLC, a California limited liability company; and DOES 1-20, as yet unknown Washington entities,

Defendants.

NO.

**CLASS ACTION COMPLAINT FOR VIOLATION OF WASHINGTON'S EQUAL PAY AND OPPORTUNITIES AND NONCOMPETITION COVENANTS ACTS (RCW CHAPTERS 49.58 AND 49.62)**

Plaintiff Sara Bublitz ("Plaintiff"), by their undersigned counsel, for their class action complaint against Defendant Guild Mortgage Company LLC ("Defendant" or "GUILD"), for violations of Washington's Equal Pay and Opportunities and Noncompetition Covenants acts (RCW Chapters 49.58 and 49.62), specifically the nondisclosure, and noncompetition and anti-moonlighting prohibitions codified at RCW 49.58.040, 49.62.020, and 49.62.070, alleges as follows:

///

///



JUSTICE LAW CORPORATION
1215 4th Ave., Suite 1630
Seattle, Washington 98101
TEL. (360) 207-0000 • FAX (818) 230-7259
www.JusticeLawCorp.com

## I. INTRODUCTION

1.1 GUILD maintains and enforces a standalone "**EMPLOYEE CONFIDENTIALITY AND RESTRICTIVE COVENANT AGREEMENT**" (**"the Agreement"**) that unlawfully restricts, restrains, and prohibits its low-wage employees in Washington from discussing their wages, engaging in a lawful profession, trade, or business of any kind, and having additional jobs, supplementing their income by working for another employer, working as independent contractors, or being self-employed, in violation of RCW 49.58.040, 49.62.020, and 49.62.070.

1.2 Specifically, **the Agreement** prohibits employees from disclosing:

> "…to any person, firm, or corporation, the Company's Confidential Information and Trade Secrets, unless previously authorized by the Company for use in the pursuit of Company business, and for the benefit of the Company."

1.3 Per **the Agreement**:

> "'Confidential Information' is defined as all non-public information obtained by Employee from or pertaining to the Company and its business during the course of Employee's employment with the Company, including but not limited to…any Company personnel information…financial information…and any other information that Employee receives as a result of Employee's employment with the Company that has not been disclosed previously to the general public by an authorized Company representative or client."

///

///

///



JUSTICE LAW CORPORATION
1215 4th Ave., Suite 1630
Seattle, Washington 98101
TEL. (360) 207-0000 • FAX (818) 230-7259
www.JusticeLawCorp.com

1.4 **The Agreement** also prohibits employees from competing "with the Company in any way" or acting:

> "...as an officer, director, employee, consultant, lender, or agent of any person or entity that is engaged in any business of the same nature as, or in competition with, the business in which the Company is now engaged or in which the Company becomes engaged during the term of Employee's employment."

1.5 **The Agreement** further prohibits GUILD's managerial employees "...for one year following the end of Employee's employment" from attempting:

> "...to sell to any Restricted Customer any goods, products or services of any type similar to the type sold by Company prior to the termination of Employee's employment."

1.6 **The Agreement** defines "Restricted Customer" as:

> "any individual or entity (i) for whom the Company provided goods, products or services and (ii) with whom/which Employee was the principal contact on behalf of the Company or about whom/which Employee acquired non-public information in connection with his/her employment by the Company."

1.7 **The Agreement** contains an overbroad and unlawful nondisclosure provision, and noncompetition and anti-moonlighting covenants that are not narrowly tailored to the statutory exceptions set forth in RCW 49.58.040(3), 49.62.010(4), and 49.62.070(2), and violate the rights of GUILD's employees in Washington.

1.8 Plaintiff seeks on behalf of themself, and the proposed Class and Subclasses, statutory damages of at least $5,000 per Class and Subclass Member, reasonable attorneys' fees, expenses, costs, and all other relief authorized by RCW 49.58.070 and 49.62.080.

/ / /



JUSTICE LAW CORPORATION
1215 4th Ave., Suite 1630
Seattle, Washington 98101
TEL. (360) 207-0000 • FAX (818) 230-7259
www.JusticeLawCorp.com

## II. JURISDICTION AND VENUE

2.1 Jurisdiction. Defendant is within the jurisdiction of this Court. Defendant does business in the State of Washington and has operations in King County. Defendant is registered to conduct business in the State of Washington. Defendant has obtained the benefits of the laws of the State of Washington and the Washington retail and labor markets.

2.2 Venue. Venue is proper in King County because Defendant operates and transacts business in King County. RCW 4.12.025(1), (3).

2.3 Governing Law. The claims asserted on behalf of Plaintiff, the Class, and Subclass Members in this complaint are brought solely under state law causes of action and are governed exclusively by Washington law.

## III. PARTIES

3.1 Plaintiff. Plaintiff is a resident of Washington. Defendant hired Plaintiff in or about April of 2018, to in or about April of 2025, as a Loan Processor at Defendant's Federal Way, Washington branch. Defendant paid Plaintiff an hourly rate of $30.87.

3.2 Defendant. Defendant is a California limited liability company with its principal place of business in San Diego, California.

3.3 Doe Defendants. Plaintiff is currently unaware of the true names and capacities of the defendants sued herein under fictitious names Does 1-20, inclusive, and therefore sues such defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of the fictitiously name defendants when their true names and capacities have been ascertained. Plaintiff is informed and believes, and thereon alleges, each of the fictitiously named defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by Plaintiff and the Class.

///

///



JUSTICE LAW CORPORATION
1215 4th Ave., Suite 1630
Seattle, Washington 98101
TEL. (360) 207-0000 • FAX (818) 230-7259
www.JusticeLawCorp.com

## IV. CLASS ACTION ALLEGATIONS

4.1 Class Definition. Pursuant to Washington Civil Rule 23, Plaintiff brings this case as a class action on behalf of a Class and Subclasses defined as follows:

4.1.1 Class Definition:

All current and former employees of Defendant within the State of Washington at any time during the period from three years preceding the filing of this Complaint to final disposition of this action.

4.1.2 EPOA Subclass Definition:

All current and former employees of Defendant within the State of Washington at any time during the period from three years preceding the filing of this Complaint to final disposition of this action who were subject to Defendant's **"EMPLOYEE CONFIDENTIALITY AND RESTRICTIVE COVENANT AGREEMENT."**

4.1.3 Noncompetition Subclass Definition:

All current and former employees of Defendant within the State of Washington at any time during the period from three years preceding the filing of this Complaint to final disposition of this action who earned less than the statutory earnings thresholds as established in RCW 49.62.020 during their employment and were subject to Defendant's **"EMPLOYEE CONFIDENTIALITY AND RESTRICTIVE COVENANT AGREEMENT."**

///

///

///



JUSTICE LAW CORPORATION
1215 4th Ave., Suite 1630
Seattle, Washington 98101
TEL. (360) 207-0000 • FAX (818) 230-7259
www.JusticeLawCorp.com

4.1.4 Anti-Moonlighting Subclass Definition:

All current and former employees of Defendant within the State of Washington at any time during the period from three years preceding the filing of this Complaint to final disposition of this action who earned less than twice the applicable Washington State minimum hourly wage and were subject to Defendant's **"EMPLOYEE CONFIDENTIALITY AND RESTRICTIVE COVENANT AGREEMENT."**

Excluded from the Class and Subclasses is any entity in which Defendant has a controlling interest, or which has a controlling interest in Defendant, and Defendant's legal representatives, assignees, and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

4.2 Numerosity. Plaintiff believes that more than 40 people have worked as employees for Defendant in the State of Washington during the relevant time period.

4.3 Commonality. There are numerous questions of law and fact common to Plaintiff, the Class, and Subclass Members. These questions include, but are not limited to, the following:

a. Whether Defendant has engaged in a common course of requiring employees to sign an agreement with overbroad and unlawful nondisclosure provisions, and noncompetition and anti-moonlighting covenants as a condition of employment;

b. Whether Defendant has engaged in a common course of requiring nondisclosure by employees of their wages as a condition of employment;

c. Whether Defendant has engaged in a common course of prohibiting employees from discussing the amount of their wages;

d. Whether Defendant has engaged in a common course of prohibiting employees from engaging in a lawful profession, trade, or business of any kind;



JUSTICE LAW CORPORATION
1215 4th Ave., Suite 1630
Seattle, Washington 98101
TEL. (360) 207-0000 • FAX (818) 230-7259
www.JusticeLawCorp.com

e. Whether Defendant has engaged in a common course of prohibiting employees from having additional jobs;

f. Whether **the Agreement** constitutes a "waiver or other document" that prevents the employee from disclosing the amount of the employee's wages within the meaning of RCW 49.58.040(1)(b);

g. Whether **the Agreement** is an unenforceable noncompetition and/or anti-moonlighting covenant under RCW 49.62.020(1)(b) and RCW 49.62.070(1) because Defendant required employees earning less than the amounts contemplated by RCW 49.62.040 and RCW 49.62.070 to sign;

h. Whether **the Agreement** constitutes a restriction, restraint, or prohibition on outside employment within the meaning of RCW 49.62.070;

i. Whether **the Agreement** exceeds the narrow exceptions permitted by RCW 49.58.040(3), 49.62.010(4), and 49.62.070(2);

j. Whether the Class and Subclass Members are entitled to the statutory damages of $5,000 per person and reasonable attorneys' fees and costs under RCW 49.58.070 and 49.62.080;

k. Whether Defendant uniformly applied **the Agreement** to low-wage employees in Washington;

l. The nature and extent of class-wide injury and the measure of compensation for such injury.

4.4 Typicality. Plaintiff's claims are typical of the claims of the Members of the Class and Subclasses because Defendant employed Plaintiff as an employee in the State of Washington. The claims of Plaintiff, like the claims of the Class and Subclasses, arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

///



JUSTICE LAW CORPORATION
1215 4th Ave., Suite 1630
Seattle, Washington 98101
TEL. (360) 207-0000 • FAX (818) 230-7259
www.JusticeLawCorp.com

4.5 Adequacy. Plaintiff will fairly and adequately protect the interests of the Class and Subclasses. Plaintiff has retained competent and capable attorneys who are experienced lawyers with significant experience in complex and class action litigation, including employment law. Plaintiff and their counsel are committed to prosecuting this action vigorously on behalf of the Class and Subclasses have the financial resources to do so. Neither Plaintiff nor their counsel have interests that are contrary to or that conflict with those of the proposed Class and Subclasses.

4.6 Predominance and Superiority. Questions of law and fact common to the Class and Subclasses predominate over any questions affecting only individual Members. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because: (a) the claims involve a uniform company policy applied identically to all Class and Subclass Members; (b) the primary legal question—whether **the Agreement** violates RCW 49.58.040, 49.62.020, and 49.62.070—is common to all Class and Subclass Members and can be resolved on a class-wide basis; (c) individual actions would be impracticable given the relatively small statutory damages available to each individual; and (d) concentrating this litigation in one forum promotes judicial economy.

## V. SUMMARY OF FACTUAL ALLEGATIONS

5.1 Washington's original Equal Pay Act of 1943 prohibited wage discrimination based on sex. Effective July 28, 2018, this legislation evolved into the Equal Pay and Opportunities Act, codified at RCW Chapter 49.58, to prevent employers from (amongst other things) imposing policies that encourage retaliation or discipline towards workers who discuss or inquire about compensation, preventing workers from moving forward.

5.2 Under RCW 49.58.040(1), "An employer may not: Require nondisclosure by an employee of his or her wages as a condition of employment; or Require an employee to sign a waiver or other document that prevents the employee from disclosing the amount of the employee's wages."



JUSTICE LAW CORPORATION
1215 4th Ave., Suite 1630
Seattle, Washington 98101
TEL. (360) 207-0000 • FAX (818) 230-7259
www.JusticeLawCorp.com

5.3 The statute provides only a narrow exception. It allows an employer "...to prohibit an employee who has access to compensation information of other employees or applicants as part of such employee's essential job functions from disclosing the wages of the other employees or applicants to individuals who do not otherwise have access to such information." (RCW 49.58.040(3)).

5.4 Effective January 1, 2020, the Washington Legislature enacted the Noncompetition Covenants Act, codified at RCW Chapter 49.62, to protect workforce mobility and prevent employers from imposing unreasonable restrictions on employees' ability to earn a living.

5.5 The Legislature found that "[w]orkforce mobility is important to economic growth and development" and that "[a]greements limiting competition or hiring may be contracts of adhesion that may be unreasonable." RCW 49.62.005(1)-(2). The Legislature directed that the provisions of Chapter 49.62 RCW "need to be liberally construed and exceptions narrowly construed." RCW 49.62.005(3).

5.6 Under RCW 49.62.020, the legislature made noncompetition covenants unlawful unless (a) the employer discloses the terms of the agreement before the employee accepts an offer of employment, or provides independent consideration, and (b) the employer compensates the employee above a minimum earnings threshold.

5.7 The statute provides only narrow exceptions. It does not include: (a) non-solicitation agreements; (b) confidentiality agreements; or (c) covenants prohibiting use or disclosure of trade secrets or inventions. RCW 49.62.010(4).

5.8 Under RCW 49.62.070(1), "...an employer may not restrict, restrain, or prohibit an employee earning less than twice the applicable state minimum hourly wage from having an additional job, supplementing their income by working for another employer, working as an independent contractor, or being self-employed."

/ / /



JUSTICE LAW CORPORATION
1215 4th Ave., Suite 1630
Seattle, Washington 98101
TEL. (360) 207-0000 • FAX (818) 230-7259
www.JusticeLawCorp.com

5.9 The statute provides only narrow exceptions: (a) where the additional services raise issues of safety for the employee, coworkers, or the public, or interfere with the reasonable and normal scheduling expectations of the employer (RCW 49.62.070(2)(a)); and (b) obligations under existing law, including the common law duty of loyalty and laws preventing conflicts of interest. (RCW 49.62.070(2)(b)).

5.10 In January 2025, the Washington Supreme Court held in *David v. Freedom Vans LLC*, 4 Wn.3d 242 (2025), that the duty-of-loyalty exception must be narrowly construed, that blanket prohibitions against working for competitors exceed that narrow construction, and that anti-moonlighting restrictions applicable to low-wage employees are presumptively invalid unless they are reasonable and narrowly tailored.

5.11 At all relevant times, twice the applicable Washington State minimum hourly wage has been as follows: $31.48 per hour in 2023 ($15.74 minimum); $32.32 per hour in 2024 ($16.28 minimum); $33.32 per hour in 2025 ($16.66 minimum); and $34.26 in 2026 ($17.13 minimum).

5.12 GUILD maintains and enforces a standalone "**EMPLOYEE CONFIDENTIALITY AND RESTRICTIVE COVENANT AGREEMENT**" (**"the Agreement"**) applicable to all employees company-wide, including those employed in Washington State. A true and correct copy of **the Agreement** is attached hereto as **EXHIBIT A**.

5.13 The "Protection of Confidential Information and Trade Secrets" provision of **the Agreement** prohibits employees from disclosing:

> "...to any person, firm, or corporation, the Company's Confidential Information and Trade Secrets, unless previously authorized by the Company for use in the pursuit of Company business, and for the benefit of the Company."

The Agreement, "Protection of Confidential Information and Trade Secrets – Use or Disclosure," p. 2, sec. 3.1.



JUSTICE LAW CORPORATION
1215 4th Ave., Suite 1630
Seattle, Washington 98101
TEL. (360) 207-0000 • FAX (818) 230-7259
www.JusticeLawCorp.com

5.14 Per **the Agreement**:

> "'Confidential Information' is defined as all non-public information obtained by Employee from or pertaining to the Company and its business during the course of Employee's employment with the Company, including but not limited to…any Company personnel information…financial information…and any other information that Employee receives as a result of Employee's employment with the Company that has not been disclosed previously to the general public by an authorized Company representative or client."

*Id.* at p. 1, sec. 1.1.

5.15 **The Agreement** is overbroad and violates RCW 49.58.040(1)(a) and (b) in at least the following respects:

i. It requires employees to agree to the covenants and provisions in **the Agreement**, including the "Protection of Confidential Information and Trade Secrets" provision that prohibits employees from disclosing their wages, as a condition of employment.

ii. The "Protection of Confidential Information and Trade Secrets" provision prohibits employees from disclosing the amount of their wages.

iii. Its restrictions exceed the narrow exceptions set forth in RCW 49.58.040(3).

///

///

///



JUSTICE LAW CORPORATION
1215 4th Ave., Suite 1630
Seattle, Washington 98101
TEL. (360) 207-0000 • FAX (818) 230-7259
www.JusticeLawCorp.com

5.16 The "Restrictions During Employment" provision of **the Agreement** prohibits employees from competing "...with the Company in any way..." or acting:

> "...as an officer, director, employee, consultant, lender, or agent of any person or entity that is engaged in any business of the same nature as, or in competition with, the business in which the Company is now engaged or in which the Company becomes engaged during the term of Employee's employment."

The Agreement, "Restrictions During Employment – Non-Competition," p. 3, sec. 6.2.

5.17 **The Agreement** further prohibits GUILD's managerial employees "...for one year following the end of Employee's employment..." from attempting:

> "...to sell to any Restricted Customer any goods, products or services of any type similar to the type sold by Company prior to the termination of Employee's employment."

*Id.* at "Post-Employment Restrictions – Non-Solicitation of Customers," p. 4, sec. 8.2.

5.18 The Agreement defines "Restricted Customer" as:

> "...any individual or entity (i) for whom the Company provided goods, products or services and (ii) with whom/which Employee was the principal contact on behalf of the Company or about whom/which Employee acquired non-public information in connection with his/her employment by the Company."

*Id.*

5.19 **The Agreement** is overbroad and violates RCW 49.62.020 in at least the following respects:

iv. The "Post-Employment Restrictions" provision of **the Agreement** are not limited to the narrow statutory exception for non-solicitation agreements, confidentiality agreements, and covenants prohibiting use or disclosure of trade secrets or inventions.



JUSTICE LAW CORPORATION
1215 4th Ave., Suite 1630
Seattle, Washington 98101
TEL. (360) 207-0000 • FAX (818) 230-7259
www.JusticeLawCorp.com

v. GUILD imposed it on employees earning less than the statutory earnings thresholds.

vi. It effectively impedes workplace mobility.

5.20 **The Agreement** also violates RCW 49.62.070 in at least the following respects:

i. The "Restrictions During Employment" provision is not limited to the narrow statutory exception for interference with "reasonable and normal scheduling expectations."

ii. It constitutes precisely the type of overbroad anti-moonlighting restriction that the Washington Supreme Court held presumptively invalid for low-wage workers in *David v. Freedom Vans LLC*.

iii. It effectively bars low-wage warehouse workers from working at a vast number of employers.

5.21 As a condition of employment, GUILD required Plaintiff and other similarly situated employees to agree to be bound by **the Agreement** containing the overbroad and unlawful nondisclosure provision, and noncompetition and anti-moonlighting covenants.

5.22 Each day **the Agreement** remained in force, **the Agreement** deterred Plaintiff and other similarly situated employees from discussing their wages, engaging in a lawful profession, trade, or business of any kind, and having additional jobs, supplementing their income by working for another employer, working as independent contractors, or being self-employed. Plaintiff and other Class Members were chilled from pursuing outside employment opportunities by reason of **the Agreement**.

5.23 GUILD threatens employees with broad legal action, including injunctive relief, liquidated damages, and attorney's fees, if they violate **the Agreement**. *See* The Agreement, "Remedies for Break," p. 5, sec. 12.

5.24 GUILD applied **the Agreement** uniformly to all its employees in Washington, regardless of whether those employees earned less than the statutory earnings threshold.



JUSTICE LAW CORPORATION
1215 4th Ave., Suite 1630
Seattle, Washington 98101
TEL. (360) 207-0000 • FAX (818) 230-7259
www.JusticeLawCorp.com

## VI. FIRST CLAIM FOR RELIEF

### (Violation of RCW 49.62 —Noncompetition Covenants Act)

6.1 Plaintiff and the Class reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

6.2 At all relevant times, Plaintiff and the Class Members were "employees" of Defendant within the meaning of RCW Chapter 49.62.

6.3 At all relevant times, Defendant was an "employer" of Plaintiff and the Class Members within the meaning of RCW Chapter 49.62.

6.4 At all relevant times, Plaintiff and the Class Members earned less than the statutory earnings thresholds as established in RCW 49.62.040 and 49.62.070.

6.5 By the actions alleged above, Defendant has restricted, restrained, and prohibited employees earning less than the statutory earnings threshold from RCW 49.62.040 from engaging in competitive activities with Defendant after the end of their employment, in violation of RCW 49.62.020.

6.6 By the actions alleged above, Defendant has also restricted, restrained, and prohibited employees earning less than twice the applicable state minimum hourly wage from having additional jobs, supplementing their income by working for another employer, working as independent contractors, or being self-employed, in violation of RCW 49.62.070(1).

6.7 **The Agreement's** restrictions exceed the narrow exceptions set forth in RCW 49.62.010(4), in addition to not being narrowly tailored to protect legitimate employer interests such as safety, scheduling, or the common law duty of loyalty, as that duty must be narrowly construed under *David v. Freedom Vans LLC*, 4 Wn.3d 242 (2025), and therefore also exceed the narrow exceptions set forth in RCW 49.62.070(2).

6.8 As a direct and proximate result of Defendant's violation of RCW 49.62.020 and 49.62.070, Plaintiff and the Class have been aggrieved.

/ / /



JUSTICE LAW CORPORATION
1215 4th Ave., Suite 1630
Seattle, Washington 98101
TEL. (360) 207-0000 • FAX (818) 230-7259
www.JusticeLawCorp.com

6.9 Pursuant to RCW 49.62.080(2), Defendant is liable to each aggrieved Class Member for statutory damages of $5,000, plus reasonable attorneys' fees, expenses, and costs.

## VII. SECOND CLAIM FOR RELIEF

## (Violation of RCW 49.58.040 — Equal Pay and Opportunities Act)

7.1 Plaintiff and the Class reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

7.2 At all relevant times, Plaintiff and the Class Members were "employees" of Defendant within the meaning of RCW Chapter 49.58.

7.3 At all relevant times, Defendant was an "employer" of Plaintiff and the Class Members within the meaning of RCW Chapter 49.58.

7.4 By the actions alleged above, Defendant required employees to agree to **the Agreement** containing a nondisclosure provision that prohibited employees from disclosing their wages as a condition of employment, in violation of RCW 49.58.040(1)(a).

7.5 By the actions alleged above, Defendant required employees to agree to **the Agreement** containing a nondisclosure provision that prohibited employees from disclosing the amount of their wages, in violation of RCW 49.58.040(1)(b).

7.6 **The Agreement's** nondisclosure provision restrictions are not narrowly tailored to employees who have access to compensation information of other employees or applicants as part of such employees' essential job functions, and therefore exceed the narrow exceptions set forth in RCW 49.58.040(3).

7.7 As a direct and proximate result of Defendant's violation of RCW 49.58.040, Plaintiff and the Class Members have been aggrieved.

7.8 Pursuant to RCW 49.58.070(1), Defendant is liable to each aggrieved Class Member for statutory damages of $5,000, plus reasonable attorneys' fees, expenses, and costs.



JUSTICE LAW CORPORATION
1215 4th Ave., Suite 1630
Seattle, Washington 98101
TEL. (360) 207-0000 • FAX (818) 230-7259
www.JusticeLawCorp.com

## VIII. THIRD CLAIM FOR RELIEF

## (Violation of RCW 19.86.020 — Consumer Protection Act)

8.1 Plaintiff and the Class reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

8.2 RCW 19.86.020 provides that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

8.3 Defendant's use of **the Agreement** constitutes an unfair or deceptive practice under RCW 19.86.020.

8.4 Specifically, **the Agreement** is not narrowly tailored to protect Defendant's business interests, is designed to exert unnecessary control over their own workforce greater than allowed under Washington law and is likely to mislead reasonable employees regarding their compensation, working conditions, and rights.

8.5 Defendant's unfair or deceptive acts described above occurred in Defendant's usual course of trade or commerce because Defendant routinely solicits and employs applicants from the open labor market. *See In re Confidential Consumer Prot. Investigation*, 21 Wn. App. 2d 520, 530 (2021); *Washington v. O'Reilly Auto Enters. LLC*, 705 F. Supp. 3d 1246, 1254 (W.D. Wash. 2023).

8.6 Defendant's unfair or deceptive acts have violated Washington statutes and contravened a specific legislative declaration of strong public interest: promoting pay transparency and pay equity as described in RCW 49.58.005; and promoting workforce mobility as described in RCW 49.62.005, *et seq.*

///

///

///



JUSTICE LAW CORPORATION
1215 4th Ave., Suite 1630
Seattle, Washington 98101
TEL. (360) 207-0000 • FAX (818) 230-7259
www.JusticeLawCorp.com

8.7 As a result of Defendant's unfair or deceptive practices described above, Plaintiff and the Class Members have been injured in their business or property: they have been deprived of their lawful rights; been threatened punitive measures for exercise of their lawfully protected rights; had their protected speech chilled; suffered suppression of their wages and earning capacity; suffered informational injury; and been deprived of wages owed. *See Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1135 (9th Cir. 2016).

8.8 RCW 19.86.090 provides that "[a]ny person who is injured in his or her business or property by a violation of RCW 19.86.020, [...] may bring a civil action in superior court to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee."

8.9 RCW 19.86.090 further provides that the Court may award treble damages within its discretion up to $25,000.

8.10 As a direct and proximate result of Defendant's violation of RCW 19.86.020, Plaintiff and the Class Members have been aggrieved.

8.11 Pursuant to RCW 19.86.090, Defendant is liable to each aggrieved Class Member for treble damages up to $25,000, reasonable attorneys' fees, expenses, and costs.

## IX. FOURTH CLAIM FOR RELIEF

## (DECLARATORY RELIEF – RCW 7.24, *ET SEQ.*)

9.1 Plaintiff and the Class reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

9.2 Plaintiff and the Class seek a declaration that **the Agreement** is unlawful and violates Washington's Equal Pay and Opportunities and Noncompetition Covenants Acts and are thereby entitled to the remedies associated therewith.

///

///

///



JUSTICE LAW CORPORATION
1215 4th Ave., Suite 1630
Seattle, Washington 98101
TEL. (360) 207-0000 • FAX (818) 230-7259
www.JusticeLawCorp.com

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on their own behalf and on behalf of the Members of the Class, prays for a judgment against Defendant, as follows:

A. Certify the proposed Class and Subclasses;

B. Appoint Plaintiff as Class representative;

C. Appoint the undersigned attorneys as Class counsel;

D. Declare that the actions complained of herein violate Washington law;

E. Declare that any offending provisions complained of herein are void and unenforceable;

F. Award Plaintiff and Class Members statutory, and/or treble damages;

G. Award Plaintiff and Class Members declaratory relief;

H. Award injunctive relief restraining Defendant from its ongoing violations;

I. Award attorneys' fees and costs to Plaintiff's attorneys, as allowed by law;

J. Award pre-judgment and post-judgment interest to Plaintiff and Class Members, as provided by law; and

K. Grant such other and further relief as this Court deems necessary.

RESPECTFULLY SUBMITTED AND DATED this 5th day of October, 2026.

**JUSTICE LAW CORPORATION**
By: _/s/ Douglas Han_
Douglas Han, WSBA #59429
Email: dhan@justicelawcorp.com
_/s/ Shunt Tatavos-Gharajeh_
Shunt Tatavos-Gharajeh, WSBA #59424
Email: statavos@justicelawcorp.com
_/s/Ryan Crist_
Ryan Crist, WSBA #65599
Email: rcrist@justicelawcorp.com
1215 4th Ave., Suite 1630
Seattle, Washington 98101
Telephone: (360) 207-0000
Facsimile: (818) 230-7259
*Attorneys for Plaintiff*

# EXHIBIT A

DocuSign Envelope ID: E2202712-CEEA-43A8-8A2B-856114064569

Guild mortgage

**EMPLOYEE CONFIDENTIALITY AND RESTRICTIVE COVENANT AGREEMENT**

This Employee Confidentiality and Restrictive Covenant Agreement ("Agreement") is made as of 11/2/2018 by and between Sara Bublitz ("Employee") and Guild Mortgage Company (the "Company") with respect to the following facts:

A. Employee is employed, or is about to become employed, by the Company.

B. In connection with this employment, Employee has or will have access to extensive confidential, proprietary, and/or trade secret information of the Company, and may in the course of employment with the Company participate in creating such information.

THEREFORE, in consideration of Employee's employment with the Company as well as the compensation paid to Employee by the Company, Employee agrees as follows:

1. Definitions.

1.1 "Confidential Information" is defined as all non-public information obtained by Employee from or pertaining to the Company and its business during the course of Employee's employment with the Company, including but not limited to the Company's Trade Secrets; inventions, designs, improvements, methodology, concepts; plans and results of research and development; marketing and advertising strategies; lists of present and future clients; client contracts; all data obtained from or related to Company clients, including their preferences and contracting habits or terms; supplier lists and information; any Company personnel information (except concerning the Employee); recruiting databases; cost figures; pricing; financial information; software, technology, information security protocols and processes, servers, firewalls, networks, passwords; IT practices, protocols and systems; special techniques of any kind peculiar to the Company's products, services, or operations; internal service and operational manuals; training and educational materials; special ideas, plans, proposals, processes or information related to the current, future and proposed business, products, services or sales of the Company and its clients; confidential and proprietary information provided to Company by any actual or potential customer, or other third party (including businesses, consultants and other entities and individuals), and including, without limitation, all of the customer's "non-public personal information," as that term is defined under the Gramm-Leach-Bliley Act of 1999 and any amendments thereto; and any other information that Employee receives as a result of Employee's employment with the Company that has not been disclosed previously to the general public by an authorized Company representative or client. This specifically includes all information the Company receives from clients or other third parties that is not generally known to the public or is subject to a confidentiality agreement. Confidential Information does not include general industry skills, experience, or know-how, and does not include information that is generally available to the public.

1.2 "Services" means any tasks performed or services rendered by Employee in the course of Employee's employment with the Company.

1.3 "Trade Secret" has that meaning set forth under applicable law. It includes all information that may be considered a Trade Secret under applicable law.

1.4 "Work Product" means Employee's works of authorship, discoveries, inventions and innovations resulting from his/her Services, and any Confidential Information and/or Trade Secrets originated or prepared by Employee for, or in the performance of, the Services.

SB

DocuSign Envelope ID: E2202712-CEEA-43A8-8A2B-856114064569

2. Proprietary Interest & Rights.

2.1. Acknowledgment of Company's Proprietary Interest. Employee acknowledges and agrees that any and all Confidential Information and Trade Secrets, whether developed by Employee alone or in conjunction with others, or by other Company employees, or otherwise acquired by the Company, is the sole and exclusive property of the Company. Employee hereby disclaims any proprietary interest in any such Confidential Information and/or Trade Secrets.

2.2 Rights to Confidential Information, Trade Secrets and Work Product. Employee acknowledges and agrees that all Confidential Information and Trade Secrets shall remain the exclusive property of the Company. Employee is authorized to use Confidential Information and Trade Secrets solely to perform Services for the benefit of the Company. No license, express or implied, to use any of the Company's Confidential Information or Trade Secrets is granted under this Agreement.

2.3. Works Made for Hire. Employee and the Company agree that all Work Product, including any work of authorship, including but not limited to any computer program, source code, processes, techniques, or software, is a "work made for hire" within the meaning of Section 101 of Title 17 of the United States Code.

2.4. Assignment of Work Product. All Work Product shall be promptly communicated to the Company. Employee hereby assigns to the Company all of Employee's rights, title and interest in and to all Work Product created in, arising from, or based on Confidential Information and/or Trade Secrets developed during the performance of the Services or provided to Employee during employment with the Company, and to any and all intellectual property rights, including but not limited to, patents, copyrights or trademarks which have been or may be obtained with respect to such Work Product, effective immediately upon origination, creation, preparation or discovery thereof and regardless of the medium of expression thereof. Whenever requested, Employee immediately shall execute a confirmatory assignment of any particular items(s) of Work Product in a form satisfactory to the Company, shall testify in all legal proceedings, sign all lawful papers and otherwise perform all acts necessary or appropriate to enable the Company and its successors and assigns to obtain and document the Company's ownership of all Work Product and enforce all available legal protections for all such Work Product in all countries.

2.5 Exclusion Notice. Subject to the requirements of applicable state law, the assignment by Employee of inventions under this Agreement, and the provisions of this Agreement requiring assignment to the Company, does not apply to any inventions that qualify fully for exclusion under the provisions of applicable state law, including, but not necessarily limited to, those attached hereto as Exhibit 1.

3. Protection of Confidential Information and Trade Secrets.

3.1 Use or Disclosure. Employee acknowledges and agrees that the Company is entitled to prevent the unauthorized use and disclosure of its Confidential Information and Trade Secrets. As part of the consideration for Employee's employment and for the compensation being paid to Employee by the Company, Employee agrees that at all times during the term of his/her employment by the Company, and indefinitely thereafter, Employee will hold in strictest confidence, and will not directly or indirectly use, disclose or allow to be disclosed to any person, firm, or corporation, the Company's Confidential Information and Trade Secrets, unless previously authorized by the Company for use in the pursuit of Company business, and for the benefit of the Company.

3.2 Adverse Use. Employee will not at any time use any of the Company's Confidential Information or Trade Secrets in any manner that may directly or indirectly have an adverse effect upon the Company's business, nor will Employee perform any acts that would tend to reduce the value of the Company's Confidential Information or Trade Secret.

DS
SB

3.3 Immunity Notice. Pursuant to the Defend Trade Secrets Act of 2016, an individual may not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that (a) is made (i) in confidence to a federal, state or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual (a) files any document containing the trade secret under seal; and (b) does not disclose the trade secret, except pursuant to court order.

4. Property of the Business. All files, documents, plans, memoranda, notes, lists, records, contracts and other documents or papers (and all copies thereof) relating to the Company's business, including such items stored in computer memories, on computer disks or by any other means, made or compiled by or on behalf of the Employee or the Company or made available to them relating to the Company's business, are and shall be the Company's property and may not be copied or removed from the Company's premises (either physically or electronically), unless expressly approved by a duly authorized representative of the Company.

5. Third Party Trade Secrets. Employee will not disclose to the Company or use in his/her work any Confidential Information, Trade Secrets or inventions of his/her former employers or any third party which Employee is not lawfully entitled to disclose or use. Employee agrees to disclose to the Company, on Attachment "A" hereto, all agreements now in effect under which Employee has agreed to maintain the confidentiality of the information of, or to not compete with, a third party.

6. Restrictions During Employment.

6.1 Non-Solicitation. Employee agrees that during his/her employment with the Company, Employee will not directly or indirectly divert or attempt to divert clients' or potential clients' business from the Company, nor will Employee directly or indirectly, solicit, induce or attempt to solicit or induce any employee of the Company to accept employment outside of the Company.

6.2 Non-Competition. Employee acknowledges and agrees that during his/her employment with the Company, he/she will not, anywhere in the world, directly or indirectly, acting individually or as the owner, shareholder, partner, consultant, independent contractor or employee of any entity, compete with the Company in any way, or act as an officer, director, employee, consultant, lender, or agent of any person or entity that is engaged in any business of the same nature as, or in competition with, the business in which the Company is now engaged or in which the Company becomes engaged during the term of Employee's employment.

7. Business Opportunities. Employee will promptly disclose to the Company any business opportunity of which Employee becomes aware during his/her employment with the Company and (i) which relates to any products or services planned, under development, developed, produced or marketed by the Company or (ii) of which Employee becomes aware in the course of or as a result of his/her employment with the Company. Employee will not take advantage of or divert any such opportunity for his/her own gain, profit or benefit, or any other person or entity without the written consent of the Company.

8. Post-Employment Restrictions. If Employee's job duties involved managing Company employees, either directly or indirectly, at any time during the twelve months preceding Employee's separation from employment, Employee will also be subject to the following post-employment obligations.

8.1 Non-Solicitation of Employees. For a period of twelve months following the end, for whatever reason, of Employee's employment with the Company, Employee shall not, directly or indirectly, induce or attempt to induce, any employee of the Company to end or diminish

SB

his/her relationship with the Company, or solicit or attempt to solicit any Company employee for outside employment. Employee shall also not provide any information about the Company's employees to any other person for the purpose of assisting any third party to solicit the Company's employees for outside employment.

8.2 Non-Solicitation of Customers. Except where otherwise prohibited by law, for one year following the end of Employee's employment, for any reason, Employee will not, directly or indirectly, attempt to sell to any Restricted Customer any goods, products or services of any type similar to the type sold by Company prior to the termination of Employee's employment. The term "Restricted Customer" means any individual or entity (i) for whom the Company provided goods, products or services and (ii) with whom/which Employee was the principal contact on behalf of the Company or about whom/which Employee acquired non-public information in connection with his/her employment by the Company.

8.3 Scope of Restrictions. Employee acknowledges and represents that the scope of the restrictions contained in this Agreement are appropriate, necessary and reasonable, and are solely for the protection of the Company's business, goodwill and property rights.

9. Return of Materials at Termination. Immediately upon the separation of Employee's employment for any reason, Employee will deliver to Company all documents, data, and other information pertaining to the Company's business, clients, suppliers, products or services, and any other Confidential Information or Trade Secrets that Employee has in his/her possession or under his/her control; and Employee shall not remove (either physically or electronically) any such documents or information from Company premises or computers.

10. Cooperation. During Employee's employment, Employee will gain knowledge of specific projects and issues related to Company's business. Employee agrees to cooperate with the Company, after termination, in any threatened or pending litigation against the Company related to issues with which Employee became familiar. The Company agrees to provide Employee with reasonable compensation for Employee's time in providing cooperation and assistance. Nothing in this provision should be interpreted to require anything other than Employee's honest and complete information regarding such matters.

11. Non-Disparagement. Employee agrees that he/she will not, during employment or following termination of employment, directly or indirectly, in any capacity or manner, make, express, transmit, or otherwise communicate in any way (or cause, assist, solicit, encourage, or participate in any of the foregoing), any communication or statement of any kind, whether verbal, in writing, electronically transmitted or otherwise, that might reasonably be construed to be derogatory or critical of, or negative toward, the Company or any of its directors, officers, owners, affiliates, subsidiaries, employees, agents, or representatives, if such communication or statement is false. Nothing herein shall prevent Employee discussing or commenting on their working conditions with other persons, or from reporting an event Employee reasonably and in good faith believes is a violation of law to the relevant law-enforcement or governmental agency. Nothing in this Agreement is intended to limit in any way Employee's right or ability to file a charge or claim of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") or comparable state or local agencies, to participate in any such action, to recover any appropriate relief, and to make any truthful statement in connection with any legal proceeding or investigation by the Company or any governmental authority. Furthermore, nothing herein shall limit any of Employee's rights under applicable law, including but not limited to, the laws enforced by the Equal Employment Opportunity Commission and the National Labor Relations Act.

SB

DocuSign Envelope ID: E2202712-CEEA-43A8-8A2B-856114064569

12. Remedies for Breach.

12.1. Injunctive Relief. Employee acknowledges that any breach of this Agreement will cause irreparable injury to the Company. Accordingly, in the event of such breach or an impending breach, the Company shall be entitled to obtain injunctive and other equitable relief from a court in addition to, and not in lieu of, the right to seek liquidated or actual damages and any other right or remedy afforded to the Company by law or otherwise.

12.2. Liquidated Damages. Due to the difficulty of quantifying and proving actual damages, in the event of Employee's breach of his/her obligations not to use or disclose Confidential Information or Trade Secrets as provided in paragraph 3, or Employee's breach of the Post-Employment Restrictions in paragraph 8, the Company shall be entitled to liquidated damages in the amount of Five Thousand Dollars ($5,000.00) for each such use, disclosure, or prohibited action. Notwithstanding the right to liquidated damages, the Company has the right to take any measures available and to claim and receive a higher amount of compensation if the Company can prove that the actual damage sustained will exceed the amount of liquidated damages.

12.3 Attorneys' Fees. In the event of any litigation concerning any controversy, claim or dispute between Employee and the Company arising out of or relating to this Agreement, the prevailing party shall be entitled to recover from the losing party reasonable expenses, attorneys' fees, and costs incurred therein or in the enforcement or collection of any judgment or award rendered therein. The "prevailing party" means the party determined by the court to have prevailed, even if such party did not prevail in all matters, not necessarily the one in whose favor a judgment is rendered. Further, in the event of any default by a party under this Agreement, such defaulting party shall pay all the expenses and attorneys' fees incurred by the other party in connection with such default, whether or not any litigation is commenced. This provision is intended to benefit the parties to this Agreement, and is not intended to create rights for any third parties.

13. Severability. Employee expressly acknowledges that he/she has carefully read all of the terms of this Agreement and agrees that the Company has been induced to enter into its relationship with Employee upon Employee's representations that he/she will abide and be bound by each of the terms and that each term is reasonable in its scope and duration. If any portion of this Agreement shall be held by a court or arbitrator of competent jurisdiction to be invalid or unenforceable, Employee agrees that the remaining portions of this Agreement shall remain in full force and effect and that, upon the request of the Company, the court or arbitrator shall construe any invalid or unenforceable portions in the manner that most closely reflects the effect and intent of the original language.

14. Entire Agreement. This Agreement sets forth the entire agreement of the parties regarding the subject matter described herein and may be amended only by a written document signed by Employee and an authorized representative of the Company.

15. Successors and Assigns. This Agreement shall inure to the benefit of the Company and its successors and assigns and is binding upon Employee's heirs and legal representatives. Employee may not assign any of Employee's rights or obligations under this Agreement.

16. Waiver. The Company's failure to enforce any provision of the Agreement shall not in any way be construed as a waiver of any such provision nor shall it prevent the Company thereafter from enforcing each and every provision of this Agreement.

17. Acknowledgments. Employee acknowledges that this Agreement is not an employment contract and that both the Company and employee are free to terminate their employment relationship at-will, with or without notice or cause.

18. Counterparts. This Agreement may be executed in counterparts and shall be binding on all parties when each has signed either an original or copy of this Agreement.

DS
SB

DocuSign Envelope ID: E2202712-CEEA-43A8-8A2B-856114064569

THE PARTIES, HAVING READ THIS AGREEMENT AND UNDERSTANDING ITS TERMS, HEREBY AGREE TO BE LEGALLY BOUND BY ITS PROVISIONS.

DocuSigned by:

**Employee Signature**

**SVP, Chief HR Officer Signature**

Sara Bublitz

**Employee Name**

**Carolyn Frank – SVP, Chief HR Officer**

11/2/2018

**Date**

11/2/2018

**Date**

**Attachment "A"**
**Obligations to Third Parties**
*(See Section 5; if none, write "NONE")*

None

**Exhibit 1**
**EXCLUSION NOTICE**
(*See Section 2*)

**CALIFORNIA EMPLOYEES**

California Labor Code section 2870 provides:

(a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

(2) Result from any work performed by the employee for the employer.

(b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.

**DELAWARE EMPLOYEES**

19 Delaware Code section 805 provides:

Any provision in an employment agreement which provides that the employee shall assign or offer to assign any of the employee's rights in an invention to the employee's employer shall not apply to an invention that the employee developed entirely on the employee's own time without using the employer's equipment, supplies, facility or trade secret information, except for those inventions that:

(1) Relate to the employer's business or actual or demonstrably anticipated research or development; or

(2) Result from any work performed by the employee for the employer.

To the extent a provision in an employment agreement purports to apply to the type of invention described, it is against the public policy of this State and is unenforceable. An employer may not require a provision of an employment agreement made unenforceable under this section as a condition of employment or continued employment.

**ILLINOIS EMPLOYEES**

765 Illinois Compiled Statutes section 1060/2 provides:

(1) A provision in an employment agreement which provides that an employee shall assign or offer to assign any of the employee's rights in an invention to the employer does not apply to an invention for which no equipment, supplies, facilities, or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) to the business of the employer, or (ii) to the employer's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by the employee for

DS
SB

the employer. Any provision which purports to apply to such an invention is to that extent against the public policy of this State and is to that extent void and unenforceable. The employee shall bear the burden of proof in establishing that his invention qualifies under this subsection.

(2) An employer shall not require a provision made void and unenforceable by subsection (1) of this Section as a condition of employment or continuing employment. This Act shall not preempt existing common law applicable to any shop rights of employers with respect to employees who have not signed an employment agreement.

(3) If an employment agreement entered into after January 1, 1984, contains a provision requiring the employee to assign any of the employee's rights in any invention to the employer, the employer must also, at the time the agreement is made, provide a written notification to the employee that the agreement does not apply to an invention for which no equipment, supplies, facility, or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) to the business of the employer, or (ii) to the employer's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by the employee for the employer.

**KANSAS EMPLOYEES**

Kansas Statutes Annotated section 44-130 provides:

(a) Any provision in an employment agreement which provides that an employee shall assign or offer to assign any of the employee's rights in an invention to the employer shall not apply to an invention for which no equipment, supplies, facilities or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless:

(1) The invention relates to the business of the employer or to the employer's actual or demonstrably anticipated research or development; or

(2) the invention results from any work performed by the employee for the employer.

(b) Any provision in an employment agreement which purports to apply to an invention which it is prohibited from applying to under subsection (a), is to that extent against the public policy of this state and is to that extent void and unenforceable. No employer shall require a provision made void and unenforceable by this section as a condition of employment or continuing employment.

(c) If an employment agreement contains a provision requiring the employee to assign any of the employee's rights in any invention to the employer, the employer shall provide, at the time the agreement is made, a written notification to the employee that the agreement does not apply to an invention for which no equipment, supplies, facility or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless:

(1) The invention relates directly to the business of the employer or to the employer's actual or demonstrably anticipated research or development; or

(2) the invention results from any work performed by the employee for the employer.

(d) Even though the employee meets the burden of proving the conditions specified in this section, the employee shall disclose, at the time of employment or thereafter, all inventions being developed by the employee, for the purpose of determining employer and employee rights in an invention.

**MINNESOTA EMPLOYEES**

Minnesota Statutes Annotated section 181.78 provides:

Subdivision 1. Inventions not related to employment. Any provision in an employment agreement which provides that an employee shall assign or offer to assign any of the employee's rights in an invention to the employer shall not apply to an invention for which no equipment, supplies, facility



SB

or trade secret information of the employer was used and which was developed entirely on the employee's own time, and (1) which does not relate (a) directly to the business of the employer or (b) to the employer's actual or demonstrably anticipated research or development, or (2) which does not result from any work performed by the employee for the employer. Any provision which purports to apply to such an invention is to that extent against the public policy of this state and is to that extent void and unenforceable.

Subdivision 2. Effect of subdivision 1. No employer shall require a provision made void and unenforceable by subdivision 1 as a condition of employment or continuing employment.

Subdivision 3. Notice to employee. If an employment agreement entered into after August 1, 1977 contains a provision requiring the employee to assign or offer to assign any of the employee's rights in any invention to an employer, the employer must also, at the time the agreement is made, provide a written notification to the employee that the agreement does not apply to an invention for which no equipment, supplies, facility or trade secret information of the employer was used and which was developed entirely on the employee's own time, and (1) which does not relate (a) directly to the business of the employer or (b) to the employer's actual or demonstrably anticipated research or development, or (2) which does not result from any work performed by the employee for the employer.

**NEVADA EMPLOYEES**
Nevada Revised Statutes Annotated section 600.500 provides:

Except as otherwise provided by express written agreement, an employer is the sole owner of any patentable invention or trade secret developed by his or her employee during the course and scope of the employment that relates directly to work performed during the course and scope of the employment.

**NORTH CAROLINA EMPLOYEES**
North Carolina General Statutes Annotated section 66-57.1 provides:

Any provision in an employment agreement which provides that the employee shall assign or offer to assign any of his rights in an invention to his employer shall not apply to an invention that the employee developed entirely on his own time without using the employer's equipment, supplies, facility or trade secret information except for those inventions that (i) relate to the employer's business or actual or demonstrably anticipated research or development, or (ii) result from any work performed by the employee for the employer. To the extent a provision in an employment agreement purports to apply to the type of invention described, it is against the public policy of this State and is unenforceable. The employee shall bear the burden of proof in establishing that his invention qualifies under this section.

**UTAH EMPLOYEES**
Utah Code section 34-39-3 provides:

(1) An employment agreement between an employee and his employer is not enforceable against the employee to the extent that the agreement requires the employee to assign or license, or to offer to assign or license, to the employer any right or intellectual property in or to an invention that is:

(a) created by the employee entirely on his own time; and

(b) not an employment invention.

(2) An agreement between an employee and his employer may require the employee to assign or license, or to offer to assign or license, to his employer any or all of his rights and intellectual property in or to an employment invention.



SB

DocuSign Envelope ID: E2202712-CEEA-43A8-8A2B-856114064569

(3) Subsection (1) does not apply to:

(a) any right, intellectual property or invention that is required by law or by contract between the employer and the United States government or a state or local government to be assigned or licensed to the United States; or

(b) an agreement between an employee and his employer which is not an employment agreement.

(4) Notwithstanding Subsection (1), an agreement is enforceable under Subsection (1) if the employee's employment or continuation of employment is not conditioned on the employee's acceptance of such agreement and the employee receives a consideration under such agreement which is not compensation for employment.

(5) Employment of the employee or the continuation of his employment is sufficient consideration to support the enforceability of an agreement under Subsection (2) whether or not the agreement recites such consideration.

(6) An employer may require his employees to agree to an agreement within the scope of Subsection (2) as a condition of employment or the continuation of employment.

(7) An employer may not require his employees to agree to anything unenforceable under Subsection (1) as a condition of employment or the continuation of employment.

(8) Nothing in this chapter invalidates or renders unenforceable any employment agreement or provisions of an employment agreement unrelated to employment inventions.

**WASHINGTON EMPLOYEES**
Revised Code of Washington Annotated section 49.44.140 provides:

(1) A provision in an employment agreement which provides that an employee shall assign or offer to assign any of the employee's rights in an invention to the employer does not apply to an invention for which no equipment, supplies, facilities, or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) directly to the business of the employer, or (ii) to the employer's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by the employee for the employer. Any provision which purports to apply to such an invention is to that extent against the public policy of this state and is to that extent void and unenforceable.

(2) An employer shall not require a provision made void and unenforceable by subsection (1) of this section as a condition of employment or continuing employment.

(3) If an employment agreement entered into after September 1, 1979, contains a provision requiring the employee to assign any of the employee's rights in any invention to the employer, the employer must also, at the time the agreement is made, provide a written notification to the employee that the agreement does not apply to an invention for which no equipment, supplies, facility, or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) directly to the business of the employer, or (ii) to the employer's actual or demonstrably anticipated research or development, or (b) the invention results from any work preformed [performed] by the employee for the employer.



DS
SB